**WO**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Mari Dawn Lloyd, | No. CV-15-02478-PHX-DLR |
| Plaintiff, | **ORDER** |
| v. | |
| Gloria Roberta Lakritz, | |
| Defendant. | |

Defendant Gloria Lakritz has filed a motion to transfer venue, (Doc. 24), and a motion to dismiss and/or motion for more definite statement, (Doc. 22). Plaintiff Mari Lloyd has filed a motion to dismiss three of Lakritz's counterclaims. (Doc. 31.) The Court heard oral argument on the motion to transfer on May 3, 2015. Neither party requested oral argument on the motions to dismiss. For the reasons stated below, Lakritz's motion to transfer is denied, Lakritz's motion to dismiss is granted, and Lloyd's motion to dismiss is granted.

## BACKGROUND

In July 2013, Plaintiff Mari Lloyd, a citizen of Arizona, and Defendant Gloria Lakritz, a citizen of Florida, formed Lakritz & Lloyd Wealth Management, LLC ("L&L"), an Arizona limited liability company with its principal place of business in Maricopa County, Arizona. (Doc. 21, ¶¶ 1, 2, 8, 9.) The parties allegedly formed L&L to operate as the Arizona office for ENG Financial Corporation ("ENG"), a Florida

corporation formed by Lakritz in 2007.  (*Id.*, ¶¶ 6, 7.)  Allegedly, the parties understood that, within one to two years, L&L would merge with ENG so that Lakritz could move to Arizona and the parties could service their clients in Arizona.  (*Id.*, ¶ 11.)  However, the partnership was never memorialized in writing.[1]

Prior to the formation of L&L, Lloyd represented to Lakritz that she would not "go into business with [her] unless the new company paid back part of an advance she owed to Merrill Lynch, her former employer."  (*Id.*, ¶ 12.)  Therefore, "Lloyd and Lakritz borrowed $70,000 from J.W. Cole Financial, Inc. ("JW Cole") and executed a Loan Agreement and Promissory Note (the "Note") in their personal capacities."  (*Id.*)

Throughout 2014, L&L and ENG operated as separate entities, and the parties' commissions were deposited into separate accounts in Arizona and Florida.  (*Id.*, ¶ 14.)  Around that same time, Lloyd entered into a lease agreement with 4D Limited Partnership on behalf of L&L, which was personally guaranteed by both Lloyd and Lakritz.  (*Id.*, ¶ 16.)  In January 2015, the companies began merging and the bank accounts were combined; Lloyd contributed $22,754.99 in capital and Lakritz contributed $21,754.99.  (*Id.*, ¶ 17.)  "Lakritz repeatedly assured Lloyd that Lloyd was a 50% owner of ENG," and that Lloyd would inherit all of the business of the companies once Lakritz retired.  (*Id.*, ¶ 19.)

The companies never completely merged, however, and in August 2015 the parties decided to end their business relationship.  (*Id.*, ¶¶ 25, 27.)  Lloyd withdrew $27,656 from the L&L account.  (*Id.*, ¶ 28.)  Later, Lakritz withdrew approximately $28,000 from the L&L account to pay for expenses allegedly unrelated to L&L, which resulted in insufficient funds to cover the lease payment.  (*Id.*, ¶¶ 29, 30.)

On February 24, 2016, Lloyd filed an amended complaint against Lakritz seeking a declaration that she is a 50% owner of ENG, claiming that her ownership stake is worth approximately $250,000.  (*Id.*, ¶¶ 33-41.)  Lloyd seeks judicial dissolution and supervision of L&L pursuant to A.R.S. § 29-785(A).  (*Id.*, ¶¶ 42-68.)  She also alleges

---

[1] Lloyd's counsel confirmed this fact at the hearing.

claims for defamation and false light.  (*Id.*, ¶¶ 69-81.)

On March 8, 2016, Lakritz filed counterclaims for misappropriation of funds, breach of fiduciary duty, intentional interference with business relations, and conversion. (Doc. 25.)  Lakritz alleges Lloyd used L&L funds for her law degree expenses, bar preparation course, and personal meals.  (*Id.*, ¶ 9.)  She further alleges Lloyd refused to participate in weekly telephone conferences, used $1,794 of L&L funds for her license plates, and paid her husband's $400 debt to the Arizona Department of Revenue.  (*Id.*, ¶¶ 11-12.)  Lloyd also allegedly disbursed two checks for $4,375 to herself in March and June of 2015.  (*Id.*, ¶ 13.)  Lakritz asserts Lloyd began using L&L staff to complete tasks related to Lloyd's law practice, as well as withdrawing an additional $27,656.66 from the L&L bank account in August 2015 for her personal benefit.  (*Id.*, ¶¶ 16, 18.)  Lloyd allegedly removed two computers and furniture from L&L's office and has threatened legal action against JW Cole.  (*Id.*, ¶¶ 20-24.)

### LAKRITZ'S MOTION TO TRANSFER

Lakritz argues this case should be transferred to the Middle District of Florida because ENG is incorporated in Florida, several anticipated witnesses reside in Florida, the alleged torts were committed in Florida, and the case has a limited connection with Arizona.  Lloyd asserts several key documents were negotiated and executed in Arizona, and that it would not be inconvenient for Lakritz to travel to Arizona because she maintains two residential properties in Arizona.  She also claims several key witnesses reside in Arizona.

**I.  Legal Standard**

"For the convenience of the parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought[.]"  28 U.S.C. § 1404(a).  "The decision of whether to transfer a case is within the broad discretion of the district court," *Berry v. Potter*, No. CIV 04-2922 PHX RCB, 2006 WL 335841, at *3 (D. Ariz. Feb. 10, 2006) (citing *Jones v. GNC Franchising, Inc.*, 211 F.3d 495, 498 (9th Cir. 2000)), and requires "an individualized,

case-by-case consideration of convenience and fairness." *Stewart Org. v. Ricoh Corp.*, 487 U.S. 22, 29 (1988) (internal quotation marks omitted). The court must "weigh multiple factors in its determination whether transfer is appropriate in a particular case." *Jones*, 211 F.3d at 498. Such factors include: (1) the location where the relevant agreements were negotiated and executed, (2) the state most familiar with governing law, (3) the plaintiff's choice of forum, (4) the parties' contacts with the forum, (5) the contacts relating to the plaintiff's cause of action, (6) differences in cost to litigate in each forum, (7) the availability of compulsory process to compel attendance of unwilling non-party witnesses, and (8) the ease of access to sources of proof. *Id.* The moving party bears the burden of demonstrating transfer is appropriate, and therefore "must make a strong showing of inconvenience to warrant upsetting the plaintiff's choice of forum." *Decker Coal Co. v. Commonwealth Edison Co.*, 805 F.2d 834, 843 (9th Cir. 1986).

**II. Analysis**

It is undisputed that Lloyd could have brought this action in the Middle District of Florida. (Doc. 26 at 5.) Thus, the Court turns to the aforementioned factors in analyzing whether transfer is appropriate in this case, while also acknowledging that "great weight is generally accorded plaintiff's choice of forum[.]" *Lou v. Belzberg*, 834 F.2d 730, 739 (9th Cir. 1987).

**A. Location Where the Relevant Agreements were Negotiated and Executed**

The parties agree that the L&L lease with 4D Limited Partnership was executed in Arizona. (Doc. 26-1, ¶ 9.) At the hearing, counsel for both parties agreed that no partnership document exists, but were unable to agree on where the alleged oral agreement was negotiated. Counsel agreed that the JW Cole promissory note was made and negotiated in Florida, signed in Arizona, and is currently held in Florida. Accordingly, because the locale of the execution of the relevant documents appears to be split, this factor neither favors nor disfavors transfer.

**B. State Most Familiar with Governing Law**

Lloyd seeks to establish her ownership stake in ENG, dissolve L&L, and claims

- 4 -

Lakritz made defamatory statements about her on social media.  ENG is a Florida corporation, and thus Florida has more familiarity with the governing law and also has a great interest in adjudicating the rights and obligations of one of its corporations. However, L&L is an Arizona limited liability company, and thus this Court has more familiarity with the law governing dissolution of the company, as well as an interest in adjudicating the rights and obligations of L&L.  With respect to the tort claims, Lloyd claims Arizona law applies because she originally filed in Maricopa County Superior Court.  But Lloyd does not specify where Lakritz made the defamatory statements or where they were published.  There are no allegations regarding to whom such statements were made, nor does Lloyd allege that she suffered damage in Arizona, as opposed to Florida.[2]  As such, the Court cannot determine what law applies to the tort claims. Accordingly, because some of claims involve application of Florida law and others involve application of Arizona law, this factor is a wash.

### C.  The Parties' Contacts with the Forum

Lloyd is an Arizona citizen and resides here.  Lakritz is a citizen of Florida, but maintains two homes in Arizona and frequently visits Arizona. (Doc. 32 at 2.)  Many of the discussions involving the alleged partnership allegedly took place in Arizona.  In addition, the parties opened the L&L bank account in Arizona, opened another bank account for commissions in Gilbert, Arizona, executed a lease with 4D Limited Partnership on behalf of L&L, and Lakritz is alleged to have conducted ENG business in Arizona.  (Doc. 26 at 10.)  The Court finds that both Lloyd and Lakritz's contacts with Arizona are substantial, and therefore this factor disfavors transfer.

### D.  The Contacts Related to Plaintiff's Causes of Action

Although Lloyd brings tort claims and moves to dissolve L&L, the crux of her case is that she is entitled to 50% of ENG via the alleged oral partnership agreement.  She alleges her interest is worth $250,000 and seeks a declaration regarding her ownership.

---

[2] Lloyd asserts that she "clearly alleges" that the statements were made to JW Cole.  (Doc. 26 at 13.)  But the amended complaint does not specify to whom such statements were made.  (*See* Doc. 21, ¶¶ 69-81.)

Compared to Lloyd's other claims, there is little doubt that this claim is the most substantial part of the underlying dispute.  Indeed, Lloyd conceded at the hearing that the only issue remaining in order to complete the dissolution of L&L is a determination of which party must satisfy L&L's last creditor: 4D Limited Partnership, the company with which the parties executed a lease for L&L's office.  Furthermore, Lloyd's tort claims are so vague that the Court cannot determine which forum has more contacts related to those claims.  At the hearing, the parties conceded that the appropriate forum is dependent on where the alleged defamatory statements were made.  But neither party presented any evidence regarding this issue.  Moreover, simply from a monetary standpoint, the tort claims are less substantial than Lloyd's claim of ownership in ENG.

Turning to the most substantial claims in Lloyd's complaint, her claim for declaratory relief, the Court finds the contacts related to this claim favor transfer.  Lloyd alleges the partnership was negotiated in Arizona.  But Lakritz disputes this fact, and at the hearing, neither party could affirmatively articulate where the alleged partnership agreement was discussed and executed.  However, Lloyd seeks to adjudicate her interest in a corporation formed under Florida law, and at least two witnesses, Lakritz and ENG's accountant, are Florida residents.  ENG's records are presumably located in Florida, and Lloyd does not dispute that she traveled to Florida in 2014 and 2015 to meet new clients and attend events.  (Doc. 24-1, ¶ 8.)  Consequently, because this claim is the most substantial portion of the case, and because the claim is substantially connected with Florida, this factor favors transfer.

**E.  Availability of Compulsory Process & Ease to Access of Sources of Proof**

At the hearing, the parties agreed that the case largely turns on their own testimony.  Although, Lloyd identified four other witnesses who may be called upon to testify:  Lauren Olsen, Patty Mattern, Rebecca Hall, and Joan Kruger, all of whom are Arizona residents, she fails to identify the anticipated content of their testimony.  (Doc. 26 at 14.)  Likewise, Lakritz identified several Florida residents that may be called as witnesses, including several JW Cole employees and ENG's secretary.  (Doc. 24 at 5.)

But she fails to specifically identify any JW Cole employees necessary for her defense or to prosecute her claims. Nor did she identify the anticipated content of their testimony. And given the fact that ENG's accountant is still an employee of ENG, the Court assumes Lakritz could compel her testify on behalf of Lakritz and ENG. *See Berry*, 2006 WL 335841, at *5 ("However, as each remains in the Postal Service's employ, their location does not mandate transfer. The Court presumes the Postal Service can compel their attendance at trial in Arizona."). Accordingly, this factor is a wash.

With respect to the ease of access to sources of proof, Lakritz likewise failed to specifically identify any information that is necessary for her case. The Court may not speculate as to what evidence is necessary, where it is located, and how difficult it may be to produce. Consequently, this factor disfavors transfer.

### F. Conclusion

On balance, the Court finds the factors disfavor transferring this action to the Middle District of Florida. Although the crux of Lloyd's complaint is that she is entitled to an ownership stake in a Florida corporation, Lakritz has failed to make a strong showing of inconvenience necessary for transfer. However, should discovery reveal that the parties' claims require witnesses outside the subpoena power of the Court, and if it is discovered that Lloyd's other claims have a greater connection to Florida, transfer may become appropriate later in this litigation. As such, the Court denies the motion without prejudice.

### MOTIONS TO DISMISS

Lakritz moves to dismiss Lloyd's amended complaint under Fed. R. Civ. P. 12(b)(6). In addition, Lloyd moves to dismiss three of Lakritz's counterclaims. The Court will address each motion in turn.

### I. Legal Standard

To survive dismissal for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6), a complaint must contain factual allegations sufficient to "raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555

1  (2007).  The task when ruling on a motion to dismiss "is to evaluate whether the claims

2  alleged [plausibly] can be asserted as a matter of law."  *See Adams v. Johnson*, 355 F.3d

3  1179, 1183 (9th Cir. 2004); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  When

4  analyzing the sufficiency of a complaint, the well-pled factual allegations are taken as

5  true and construed in the light most favorable to the plaintiff.  *Cousins v. Lockyer*, 568

6  F.3d 1063, 1067 (9th Cir. 2009).  However, legal conclusions couched as factual

7  allegations are not entitled to the assumption of truth, *Iqbal*, 556 U.S. at 680, and

8  therefore are insufficient to defeat a motion to dismiss for failure to state a claim, *In re*

9  *Cutera Sec. Litig.*, 610 F.3d 1103, 1108 (9th Cir. 2008).

10  **II.  Lakritz's Motion**

11  Lakritz moves to dismiss Lloyd's amended complaint or, alternatively, she moves

12  for a more definite statement under Rule 12(e).  She argues Lloyd's amended complaint

13  is vague and fails to plausibly establish that she is entitled to a 50% ownership in ENG.

14  Lakritz also asserts Lloyd fails to establish that the Court's intervention in necessary to

15  dissolve and wind up L&L.  Last, she argues that Lloyd's defamation claims fail to

16  identify the content of the alleged defamatory statements, where they were made, and to

17  whom such statements were published.[3]

18  **A.  Declaratory Judgment**

19  In count one of her amended complaint, Lloyd seeks a declaration pursuant to

20  A.R.S. § 12-1831 that she has a 50% ownership interest in ENG.  (Doc. 21, ¶¶ 33-41.)

21  She alleges that L&L and ENG began merging in January 2015 by combining bank

22  accounts.  (*Id.*, ¶ 34.)  Lloyd further alleges that she made a capital contribution to the

23  companies and that Lakritz assured her that she was a 50% owner of ENG.  (*Id.*, ¶¶ 35-

24  35.)  Lloyd asserts Lakritz is now claiming sole ownership in ENG.  (*Id.*, ¶ 37.)

25  Lloyd alleges that she and Lakritz were members of L&L, and that eventually

26

27  [3] Lakritz argues Lloyd fails to establish that the Court has jurisdiction in this case because the amended complaint fails to identify what conduct occurred in Arizona or what property is located in Arizona.  (Doc. 22 at 4.)  But Lloyd is an Arizona citizen and

28  L&L is an Arizona corporation.  These allegations meet the minimum jurisdictional pleading requirements.

ENG would close once the companies merged.  (*Id.*, ¶ 11.)  But L&L and ENG did not merge, and thus notably absent from the allegations is an identifiable legal basis under which Lloyd believes she is entitled to ownership in ENG.  The amended complaint contains only bare assertions of ownership.  She does not allege that the parties signed a contract, nor does she directly allege an oral agreement exists granting her such an interest.  There are no allegations regarding whether ENG's articles of incorporation were amended to include Lloyd as an owner, when the parties decided to become partners, where any alleged agreement was executed, and the specific terms of such an agreement.  In addition, there are no allegations detailing the specifics of any such merger and when it would take place.  These allegations certainly create an inference that Lloyd is a 50% owner of L&L, that Lloyd was induced to work for Lakritz, that they formed L&L in order to accomplish this, and that the two companies might eventually merge into a single entity.  These same allegations, however, fail to plausibly establish Lloyd's alleged ownership in ENG should the merger fall through.  Lloyd fails to identify any legal basis to support her claim, and thus she fails to plausibly allege that she is entitled to a stake in ENG.

Lloyd argues that she states a claim for declaratory relief under A.R.S. § 12-1832. (Doc. 27 at 9.)  But the statute provides "[a]ny person interested under a deed, will, written contract or other writings . . . may have determined any question of construction or validity arising under the instrument . . . and obtain a declaration of rights, status or other legal relations thereunder."  § 12-1832.  Lloyd does not allege that she is entitled to an interest in ENG via written document.  At the most, she claims Lakritz promised her an interest if the L&L and ENG merged.  This statute is inapplicable.

**B.  Judicial Dissolution of L&L**

In counts two and three, Lloyd seeks to dissolve L&L under A.R.S. § 29-785(A) and seeks the Court's supervision in doing so.  (Doc. 21, ¶¶ 42-68.)  She alleges that she and Lakritz dispute how L&L "should be operated and what expenses should be paid by the business."  (*Id.*, ¶ 46.)  She claims Lakritz removed $28,000 from L&L, "but upon

information and belief, has not used the funds for L&L's benefit."   (*Id.*, ¶ 50.) Furthermore, she claims L&L "must be dissolved due to the management deadlock between Lloyd and Lakritz," (*Id.*, ¶ 58), and that Court supervision is necessary because Lakritz "has been unwilling to agree to an amicable split of the companies' assets."  (*Id.*, ¶ 63.)

Lakritz argues there is no need for Court supervision of the dissolution of L&L because there is nothing left in dispute.  She asserts the L&L bank account is empty.  The only outstanding issue is satisfaction of L&L's last creditor, 4D Limited Partnership, for which the parties have agreed that they need to find a new tenant.  (Doc. 33 at 3.)  Lakritz agrees to a non-judicial dissolution under A.R.S. § 29-781, which only requires the consent of both members of L&L.  (Doc. 22 at 5.)  She asserts these claims are a waste of judicial resources.

Given Lakritz's agreement to dissolve L&L, there appears to be no need for Court supervision.   The parties agree that the only outstanding issue is how to satisfy the remainder of the lease owed to 4D Limited Management.  Lloyd claims this requires a determination of the parties' rights in ENG.  But the companies never merged, nor are there allegations that 4D Limited Management is a creditor of ENG.   Furthermore, although the lease was executed on behalf of L&L, it was personally guaranteed by both Lloyd and Lakritz.  (Doc. 21, ¶ 16.)  The only issue the Court must potentially decide is who must satisfy the outstanding lease, an issue raised in Lakritz's counterclaims that will be decided in this litigation separate from Lloyd's claims.

In sum, Lloyd's bare allegations regarding Lakritz's efforts to stall dissolution are fatal to her claim.  She claims Lakritz has made "unreasonable demands upon Lloyd and insisted that Lloyd pay her money that Lakritz was not entitled."  (Doc. 27 at 11.)  In addition, she states that "Lakritz continuously refused to agree to an amicable split of the companies' assets and liability and instead made it clear she would not take responsibility for legitimate company liabilities and expenses."   (*Id.*)   But she fails to identify any particular issues necessary for the Court to intervene, and Lakritz's counterclaims seek to

adjudicate ultimate responsibility for the outstanding debt to 4D Limited Management. As such, Lakritz fails to state a claim for involuntary dissolution of L&L as well as the need for the Court's supervision.

### C. Tort Claims

Count four alleges a claim for defamation and count five alleges a claim for false light.  (Doc. 21, ¶¶ 69-81.)  Lloyd claims Lakritz "made disparaging and false statements through social media, electronic communications and verbal means to common acquaintances of Lloyd and Lakritz and the public to the effect that Lloyd was a thief and had been stealing money from L&L."  (*Id.*, ¶ 70.)  She claims these statements were made in mid to late 2015, and that they "consisted of matters that gave publicity to falsities concerning Lloyd placing her in a false light."  (*Id.*, ¶ 78.)  Lakritz argues these allegations are vague and fail to state a plausible claim.  The Court agrees.

To establish defamation under Arizona law, a plaintiff must show (1) a false statement, (2) unprivileged publication of the statement to a third party, (3) and fault amounting to negligence on the part of the publisher.  *Boswell v. Phx. Newspapers, Inc.*, 730 P.2d 178, 180 (Ariz. Ct. App. 1985).  False light occurs when the defendant gives publicity to a private matter concerning another that places the other before the public in a false light, the false light is highly offensive to a reasonable person, and the actor had knowledge or acted in disregard to the falsity of the published information.  *Godbehere v. Phx. Newspapers, Inc.*, 783 P.2d 781, 784 (Ariz. 1989).

Lloyd's tort claims fail to identify the content of any alleged defamatory statement, the context in which it was made, whether the statement was spoken or written, where the statement was made, when it was made, and to whom it was published. With respect to Lloyd's false light claim, she fails to identify what private matter Lakritz published to others that cast Lloyd in a false light.  Indeed, Lloyd appears to concede that her allegations are vague, noting that "[t]his case is in the very early stages and Lloyd is still gathering information concerning the specific details surrounding her defamation and false light claims against Lakritz."  (Doc. 27 at 13.)  But Lloyd may not throw out

conclusory allegations in hopes of supporting her claims through discovery.  Lloyd must first state plausible claims against Lakritz.  The Court will not permit Lloyd to engage in a fishing expedition.

Given the lack of information, the Court finds that Lloyd fails to allege plausible claims for defamation or false light.  Furthermore, because the content of the statements has not been identified, Lakritz is unable to defend herself from such claims.  Accordingly, both of these claims fail.

### D.  Leave to Amend

Lloyd requests that the Court grant her leave to cure the deficiencies identified by the Court herein.  The Court finds that amendment would not be futile or cause undue delay.  *See* Fed. R. Civ. P. 15(a).  Therefore, Lloyd may file a second amended complaint in accordance with LR Civ. 15.1(a).

## III.  Lloyd's Motion

Lloyd moves to dismiss three of Lakritz's counterclaims:  (1) misappropriation of funds, (2) breach of fiduciary duty, and (3) conversion.  (Doc. 31.)   She argues that these claims are derivative in nature and that Lakritz may not bring them individually.  She also asserts that Lakritz failed to comply with A.R.S. § 29-831, and that a breach of fiduciary duty claim cannot be brought against members of an LLC.

Lakritz brings claims for misappropriation of funds, breach of fiduciary duty, and conversion on behalf of herself and L&L.  (Doc. 25, ¶¶ 27-51, 58-68.)  She alleges Lloyd used L&L funds to pay expenses for her legal education, pay off personal debt, renew her license plates, and pay her husband's tax obligations, and withdrew $788 for a non-business related purpose.  (*Id.*, ¶¶ 31-36.)  She claims Lloyd breached her fiduciary duty to L&L by using funds for personal expenses, refused to participate in weekly business meetings with Lakritz, directed L&L employees to conduct business for Lloyd's law practice, removed company property, and removed data from L&L's business computers.  (*Id.*, ¶¶ 44-48.)  Further, Lakritz alleges Lloyd converted company assets and property by withdrawing money for personal use and removing Lakritz's furniture from L&L's

office.  (*Id.*, ¶¶ 62-66.)

Lloyd argues these claims are wholly derivative in nature, and thus they cannot be brought on behalf of Lakritz individually.  (Doc. 31 at 4-5.)  An action is derivative "if the gravamen of the complaint is injury to the corporation, or to the whole body of its stock or property without any severance or distribution among individual holders, or if it seeks to recover assets for the corporation or to prevent the dissipation of assets." *Funk v. Spalding*, 246 P.2d 184, 186 (Ariz. 1952).  Direct actions are appropriate when "the injuries or damages were sustained by individual shareholders rather than by the corporation." *Albers v. Edelson Tech. Partners L.P.*, 31 P.3d 821, 826 (Ariz. Ct. App. 2001).  Here, Lakritz's claims seek recovery of assets on behalf of L&L, and thus they are clearly derivative in nature.  Lakritz fails to identify any specific individual damage, and thus her individual claims cannot stand.

In addition, Lloyd asserts that Lakritz's derivative claims are barred because she failed to comply with A.R.S. § 29-831, which requires a member to make "demand on the manager or those members with such authority requesting that the manager or the members cause the limited liability company to sue in its own right" and that manager or members "wrongfully refuse to bring the action."  Lakritz claims "it would be futile to ask the other member of L&L to agree to bring a lawsuit because the lawsuit is directed at the only other member."  (Doc. 38 at 6.)  She also alleges that she demanded Lloyd to return to money to L&L both verbally and via email.  (Doc. 25, ¶ 15.)  But Arizona law is clear that § 29-831 contains no futility exception.  *See Albers*, 31 P.3d at 829 (noting that the language of the statute is "clear and admits of no exception").  In addition, Lakritz's demand to Lloyd to return the money is insufficient, as she does not allege that she made demand on the manager or managers of L&L with authority to cause L&L to sue on its own behalf.  *See* A.R.S. § 29-831(2).  Consequently, Lakritz failed to comply with § 29-831, and her derivative claims are barred.[4]

---

[4] Because all of Lakritz's derivative claims are barred, the Court need not address Lloyd's separate argument that a member of an LLC owes no fiduciary duties to the LLC or other members absent an operating agreement imposing such duties.

- 13 -

Accordingly, counts one, two, and four of Lakritz's counter-complaint are dismissed. Lakritz may amend her counter-complaint to cure any deficiencies identified herein in accordance with LR Civ. 15.1(a).

**IT IS ORDERED**:

1. Lakritz's motion to transfer venue, (Doc. 24), is **DENIED WITHOUT PREJUDICE**.

2. Lakritz's motion to dismiss, (Doc. 22), is **GRANTED**, and Lloyd's claims are **DISMISSED**.

3. Lloyd's motion to dismiss, (Doc. 31), is **GRANTED**, and counts one, two, and four of Lakritz's counter-complaint are **DISMISSED**.

4. Within seven days of the date of this Order, both parties are permitted to amend their respective complaints to cure the deficiencies identified herein. The amended filings must comply with LR Civ. 15.1(a).

Dated this 17th day of May, 2016.

Douglas L. Rayes
United States District Judge